IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VICTORIA ANN BURTON, *<br>*Individually, and as a Personal Representative of*<br>*The Estate of Shane Burton,* | \* <br> \* |
| *Plaintiff*, | \* |
| v. | \*   Civil Action No. RDB-24-2445 |
| NURUDEEN MATTI, CYNTHIA BRISCOE, MICHELLE MANN, ASHLEY WATTS, ASHLEY WATSON, MARCELLA SMITH, JEREMIAH KINNEY, LAUNCY OMONUA, and ALISCIA JAMES, | \* <br> \* <br> \* <br> \* |
| *Defendants*. | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This civil rights case arises out of the brutal murder of Shane Burton on August 27, 2021, while a pretrial detainee at the Maryland Reception, Diagnosis and Classification Center ("MRDCC"), a state prison in Baltimore City. In essence, the Complaint (ECF No. 1) alleges the following: MRDCC has a housing unit with two floors. The prison operates a rotational system in which the cells of one of the unit's two floors are unlocked and open while the other floor's cells are locked and closed. Burton was housed on the unit's lower floor. During a period in which Burton's cell was unlocked and open, but while he remained inside the cell, a group of inmates housed on the unit's upper floor, whose cells were supposed to have been locked, got out of their cells and went down to Burton's cell on the lower floor. These inmates

1

are alleged to have worked as a team: a few stood guard outside the cell while others entered and stabbed Burton repeatedly to death with makeshift weapons.

Plaintiff Victoria Ann Burton is Shane Burton's mother. On August 22, 2024, she filed this four-count lawsuit individually and as the personal representative of her son's estate. She sued nine state officials[1] associated with MRDCC: Nurudeen Matti, Warden of MRDCC; Cynthia Briscoe, Assistant Warden of MRDCC; Michelle Mann, Chief of Security of MRDCC; Corporal Ashley Watts; Corporal Ashley Watson; Officer Marcella Smith; Sargeant Jeremiah Kinney; Sargeant Launcy Omonua; and Officer Aliscia James. (ECF No. 1.) These Defendants are sued individually and in their official capacities. (*Id.*) The Complaint alleges a 42 U.S.C. § 1983 claim wrongful death in violation of the Eighth and Fourteenth Amendments (Count I); a § 1983 survival action based on Count I (Count II); wrongful death in violation of Articles 16, 24, and 25 of the Maryland Declaration of Rights (Count III); and a survival action based on Count III (Count IV). (ECF No. 1 ¶¶ 41–51, 52–63, 64–75, 76–87.)

Now pending Defendants Matti, Mann, Smith, Kinney, Omonua, and James's[2] Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 19.) The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.[3] The Court heard argument on the Motion

---

[1] Plaintiff also sued the State of Maryland and the Maryland Department of Public Safety and Correctional Services. ECF No. 1.) The parties jointly stipulated to dismissal of those Defendants (ECF No. 9), which the Court entered by Marginal Order on November 19, 2024 (ECF No. 11).

[2] Defendants Cynthia Briscoe, Ashley Watts, and Ashley Watson did not join the Motion to Dismiss. The parties filed a joint stipulation as to their dismissal on December 12, 2025. (ECF No. 29.)

[3] Counts I and II arise under 42 U.S.C. § 1983, giving the Court federal question subject matter jurisdiction. 28 U.S.C. § 1331; *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). The Court has supplemental jurisdiction over Counts III and IV, which allege

2

to Dismiss on December 10, 2025. For reasons stated on the record during the hearing and explained below, the Court DENIES the Motion to Dismiss (ECF No. 19).

## BACKGROUND

### I.  Factual Background

At the motion-to-dismiss stage, the Court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Unless otherwise noted, all facts herein come from the Complaint (ECF No. 1).

On August 27, 2021, Shane Burton was a pretrial detainee incarcerated at the Maryland Reception, Diagnostic and Classification Center, a state prison in Baltimore City, Maryland. (*Id.* ¶¶ 1, 15, 22–23; ECF No. 19-1 at 6; ECF No. 24 at 5.) He and the other MRDCC inmates were housed in a two-story unit, with half the inmates on each floor. (ECF No. 1 ¶ 24.) Burton was housed on the lower level. (*Id.* ¶ 26.)

The Complaint alleges that it was MRDCC's procedure and practice to unlock and open the cells of one of the housing unit's floor at a time. (*Id.* ¶ 25.) That is, while the cell doors of the upper floor were open, the lower-floor cells were locked, and vice versa. (*Id.*) This rotation system allowed for corrections officers to better ensure their own safety and that of the inmates. (*Id.*)

---

violations of the Maryland Constitution "so related" to the federal civil rights claims that "they form part of the same case or controversy." 28 U.S.C. § 1367.

On August 27, 2021, during a period in which the lower-floor cells were unlocked and open, Burton was inside his unlocked cell. (*Id.* ¶¶ 26–27.) At this point, the upper-floor cells were locked. (*Id.* ¶¶ 26–27.) Certain inmates who were housed on the upper floor, unnamed in the Complaint, manipulated the locks on their cells and opened the doors. (*Id.* ¶¶ 26–27.) They then went down to Burton's cell on the lower floor. (*Id.* ¶ 31.) Some of them stood guard outside his cell while others entered and closed the door. (*Id.*) Once inside, they covered the window in the cell door to block anyone from seeing what was happening inside Burton's cell. (*Id.*) They proceeded to stab Burton repeatedly to death with makeshift weapons. (*Id.*)

Plaintiff is Burton's mother and the personal representative of his estate. (*Id.* ¶ 2.) Defendants are corrections officers and management of MRDCC. (*Id.* ¶¶ 5–13.) Specifically, Defendants Matti and Mann are MRDCC's Warden and Chief of Security, respectively. (*Id.* ¶¶ 5, 7.) Defendants Smith, Kinney, Omonua, and James are MRDCC corrections officers. (*Id.* ¶¶ 10–13.) Plaintiff alleges that Defendants knew and understood that MRDCC inmates had an ongoing practice of manipulating the locks of their cell doors from inside, otherwise called "popping" the doors, to exit their cells without authorization and gain access to other areas within the prison. (*Id.* ¶¶ 26–28.) Plaintiff claims that the prison was not adequately staffed on August 27, 2021. (*Id.* ¶ 29.) She also alleges that on August 27, 2021, Defendants Watts, Watson, Smith, Kinney, Omonua, and James were not at their posts as they should have been to monitor and supervise the inmates for at least twenty minutes, which allowed the murderers to get out of their cells and into Burton's. (*Id.* ¶¶ 30–31.)

The Complaint asserts that, for years prior to Burton's murder, inmates at MRDCC would seek out materials around the prison with which they could make weapons and inflict

4

injury on other inmates. (*Id.* ¶¶ 32–33.) It alleges that Defendants had knowledge of both the existence and accessibility of such materials around MRDCC and that inmates had previously converted those materials into weapons. (*Id.* ¶¶ 32–33.) Plaintiff alleges that Defendants knew that inmates using such makeshift weapons had inflicted life-threatening wounds requiring hospitalization on other inmates in the past. (*Id.* ¶¶ 32–33.) Finally, the Complaint claims that, in spite of this knowledge, Defendants never took any action to remedy such problems, reduce risks, or otherwise protect or safeguard inmates. (*Id.* ¶ 33.) The Complaint asserts, to that end, that after the attack on Burton, Defendants searched multiple cells in MRDCC's housing unit and found multiple makeshift knives. (*Id.* ¶ 35.)

The Complaint avers that many minutes passed after Burton was attacked and before any corrections officer entered the unit. (*Id.* ¶ 36.) Many more minutes still passed before any officer realized that Burton had been attacked. (*Id.*)

Defendant Smith was the officer who eventually reached Burton's cell. (*Id.* ¶ 37). Apparently, Burton's cell was locked when Smith arrived, which caused her to search for the correct key to open the door. (*Id.*) The Complaint alleges that this took "some time." (*Id.*) Smith then found Burton on the ground wounded. (*Id.*) She sent out an alert of assault and awaited backup. (Id.) She did not render any aid at this time. (*Id.*) The Complaint alleges that Defendants "failed to properly and safely diagnose and treat [Burton] and rendered improper, negligent, and delayed treatment such that [Burton] suffered from severe injuries until he died." (*Id.* ¶ 38.)

Plaintiff claims that Defendants knowingly and intentionally violated the standard practices for adult correctional facilities in that they knowingly allowed a pattern of conduct

to arise in which inmates would "pop" the locks of their doors and get out of their cells. (*Id.* ¶¶ 39–40.) The Complaint asserts that Defendants failed to correct locks on the cell doors to prevent this "popping," which allowed inmates to come and go at will from their cells, even when not permitted. (*Id.*) Plaintiffs claim that Defendants knew about understaffing issues, that inmates "popped" their cells—allowing them to circumvent lockdown—and knew that inmates made weapons out of items readily accessible to inmates. (*Id.* ¶ 40.)

## II.    Procedural History

Plaintiff filed this four-count lawsuit on August 22, 2024, against Nurudeen Matti, Cynthia Briscoe, Michelle Mann, Corporal Ashley Watts, Corporal Ashley Watson, Officer Marcella Smith, Sargeant Jeremiah Kinney, Sargeant Launcy Omonua, Officer Alicia James. *See generally* (ECF No. 1). After the Court granted multiple consent motions for extensions of time (ECF Nos. 12, 14), on April 14, 2025 Defendants filed the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 19.) This Court heard argument on the Motion on December 10, 2025. The matter is ripe for review.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b), a complaint must set forth "'a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). A complaint must

contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint need not include "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but it must contain "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. Finally, in civil rights cases at the 12(b)(6) stage, courts "must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (internal quotations and citations omitted) (emphasis in original); *accord Pinkett v. Crowder*, ELH-13-2509, 2014 WL 3571802, at *6 (D. Md. July 18, 2014) (citing *Edwards*).

## ANALYSIS

Counts I and II are federal claims brought under 42 U.S.C. § 1983. (ECF No. 1 ¶¶ 41–51.) Counts III and IV are claims brought under the Maryland Declaration of Rights. (*Id.* ¶¶ 52–63.) Defendants raise two arguments for dismissal of the federal claims and two arguments for dismissal of the Maryland claims. (ECF No. 19-1 at 4–18, 18–21.)

### I. Federal Claims (Counts I and II)

Plaintiff brings Count I pursuant to 42 U.S.C. § 1983 and alleges wrongful death in violation of the Fourteenth Amendment.[4] (ECF No. 1 ¶¶ 41–51.) Count II is a survivorship

---

[4] The Complaint alleged violations of the Eighth and Fourteenth Amendments. *See* (ECF No. 1). Both parties agreed in their briefing (ECF No. 19-1 at 6; ECF No. 24-1 at 5) and at the December 10, 2025, motions hearing that, because Burton was pretrial detainee, only the Fourteenth Amendment applies here. *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir.

action based on the alleged wrongful death. (*Id.* ¶¶ 52–63.) She sues Defendants in their individual capacities.[5] Defendants assert two arguments for dismissal of the federal claims. First, they claim that the Complaint fails to allege personal involvement by Defendants in any putative constitutional deprivation. (ECF No. 19-1 at 4–5.) Second, they argue that Plaintiff fails to state a plausible Fourteenth Amendment deliberate-indifference claim. (*Id.* at 5–15.) The Court disposes of these arguments together: Plaintiff alleges a plausible claim of deliberate indifference under the Fourteenth Amendment. In so doing, she has sufficiently pleaded individual involvement of Defendants.

### a. The Complaint alleges a plausible claim of deliberate indifference under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment affords pretrial detainees protection "from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Short v. Hartman*, 87 F.4th 593, 610 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). There are two elements in a Fourteenth Amendment failure-to-protect claim. First, the detainee must show that the defendant officer exposed him "to an objectively 'substantial' risk of serious harm.'" *Younger v. Crowder*, 79 F.4th 373, 382 (4th Cir. 2023) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This element requires the Court to "assess whether society

---

2021) (separating Eighth Amendment claims (for convicted prisoners) from Fourteenth Amendment claims (for pretrial detainees)).

[5] The Complaint's caption was styled as suing each Defendant in their individual and official capacities. *See* (ECF No. 1). At the hearing on this Motion, Plaintiff's counsel stipulated that no official-capacity claim would be available here because official-capacity claims are barred as not within the scope of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1985).

considers the risk that [the plaintiff] complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 26 (1993). The second element requires showing the defendant officer's "deliberate indifference to a serious risk of harm on the purely objective basis that the 'governmental action' is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Short*, 87 F.4th at 611 (quoting *Kingsley*, 576 U.S. at 398). This test is "'solely an objective one.'" *Id.* at 609 (quoting *Kingsley*, 576 U.S. at 397). This element requires Plaintiff to show "that [Defendants'] action or inaction was . . . 'objectively unreasonable,' . . . that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." *Id.* at 611 (quoting *Kingsley*, 576 U.S. at 397). Said differently, "it is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Farmer*, 511 U.S. at 836 (describing civil recklessness for deliberate indifference purposes)).

Applying those two elements here, the Complaint alleges sufficient facts to survive the Motion to Dismiss. As to the first element, the Complaint proffers factual material that raises a plausible claim that Defendants subjected Burton to an objectively serious risk of harm. It alleges that *each* Defendant knew that MRDCC inmates had a pattern of manipulating defective cell locks—what the Complaint labels "popping" the locks—to exit their cells at will and without authorization. (ECF No. 1 ¶¶ 28.) It alleges that *each* Defendant understood—for years prior to Burton's murder—that MRDCC inmates sought out materials available around the prison from which they could make weapons. (*Id.* ¶¶ 32–33.) The Complaint further claims

9

that *each* Defendant knew that MRDCC inmates used those makeshift weapons to harm other inmates. (*Id.* ¶ 32.) It claims that *each* Defendant knew that MRDCC inmates had previously used such makeshift weapons to cause life-threatening injuries requiting hospitalization. (*Id.* ¶ 32.) Plaintiff claims that *each* Defendant was in charge of MRDCC's housing unit on August 27, 2021, and failed to properly staff their posts for at least twenty minutes, during which time Burton was attacked. (*Id.* ¶¶ 30–31, 36.) Finally, the Complaint alleges that Defendant Smith arrived at Burton's cell after the attack but failed to render proper medical aid while awaiting backup. (*Id.* ¶ 37.) The Complaint sufficiently alleges facts to state the first element.

With respect to the second element, the Complaint plausibly claims that each Defendant's putative actions and inactions—specifically, (1) not changing a system of defective locks which allowed inmates to exit their cells willingly at any time and (2) not being at their posts for at least twenty minutes on August 27, 2021, when Burton was murdered—were objectively unreasonable. As the Fourth Circuit stated in *Short*, a complaint sufficiently alleges this element if it pleads facts showing that defendant acted or failed to act "'in the face of an unjustifiably high risk of harm.'" *Short*, 87 F.4th at 611 (quoting *Farmer*, 511 at 836). The Complaint shows an unjustifiably high risk of harm in allowing the pattern of "popping" locks to exist and in not being on post for more than twenty minutes. Therefore, the second element is met for the purposes of this 12(b)(6) motion. Taken together, the well-pleaded facts in the Complaint, taken as true, state a plausible Fourteenth Amendment failure-to-protect claim.[6]

---

[6] At the motions hearing, counsel for the parties addressed whether the Complaint adequately pleads a medical-needs claim. Though a close call, for the limited purposes of a motion to dismiss, which serves only to "test the sufficiency of the complaint," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999), the Complaint is sufficient in this respect. *See also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2014) ("A complaint need

10

As noted above, in doing so, the Complaint also sufficiently alleges the personal involvement of each Defendant. Therefore, Motion to Dismiss (ECF No. 19) Counts I and II is DENIED.

### b. Defendants are not entitled to qualified immunity at this early stage.

Defendants claim entitlement to qualified immunity for the federal claims. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When applied, this is a two-step inquiry. "To overcome qualified immunity, a plaintiff must show '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). However, the Fourth Circuit has made clear that when qualified immunity is "asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). This is because "dismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is plausible on its face." *Id.* (citing *Iqbal*, 556 U.S. at 678). "The plaintiff's complaint will not be dismissed as long as he provides sufficient detail about his claim to show that he has a more-than-conceivable chance of success on the merits." *Id.* (citing *Twombly*, 550 U.S. at 570). As explained above, Plaintiff has sufficiently alleged her § 1983 claims to survive

---

not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege* facts sufficient to *state* elements of the claim." (internal quotations and citations omitted)).

this Motion to Dismiss (ECF No. 19). Thus, qualified immunity is not proper at this early stage of litigation.

## II. Maryland Claims (Counts III and IV)

Counts III and IV mirror the structure of Counts I and II in that Count III alleges wrongful death in violation of Articles 16, 24, and 25 of the Maryland Declaration of Rights, and Count IV is a survivorship claim based on the alleged wrongful death. (ECF No. 1 ¶¶ 64–75, 76–87.) Article 16 of the Declaration of Rights provides: "[t]hat sanguinary Laws ought to be avoided as far as it is consistent with the safety of the State; and no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter." Md. Const., Decl. of Rts., art. 16. Article 24 provides: "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." *Id.* art. 24. Article 25 provides: "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law." *Id.* art. 25. Maryland courts have long recognized that "a common law action for damages lies when an individual is deprived of his or her liberty in violation of the Maryland Constitution," including the Maryland Declaration of Rights. *Okwa v. Harper*, 757 A.2d 118, 140 (Md. 2000) (collecting cases).

Defendants raise two arguments for dismissal of these State claims. (ECF No. 19-1 at 18–21.) First, Defendants argue that they are entitled to immunity from suit under the Maryland Tort Claims Act. (*Id.* at 18–20.) Second, they assert that Plaintiff fails to state a claim under those provisions of the Declaration of Rights. (*Id.* at 20–21.) As to the first argument,

12

the Maryland Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (West 2025), immunizes state officials from suit if their conduct was (1) within the scope of their public duties and (2) performed without malice or gross negligence. *Id.* Defendants argue that the Complaint has not pleaded gross negligence or malice. (ECF No. 19-1 at 19.)

At Maryland law, gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences." *Barbre v. Pope*, 935 A.2d 699, 187 (Md. 2007) (quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)). Conduct that demonstrates a "thoughtless disregard of the consequences without the exertion of any effort to avoid them" is sufficient. *Id.* (quoting *Liscombe*, 495 A.2d at 846). "[A] wrongdoer is guilty of gross negligence . . . [if he] is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.* (quoting *Liscombe*, 495 A.2d at 846). The Complaint sufficiently alleges gross negligence such that Defendants are not immunized from suit under the Maryland Tort Claims Act. It alleges that Defendants knew that inmates were manipulating cell-door locks and fashioning makeshift weapons with materials accessible around MRDCC. (ECF No. 1 ¶¶ 26–37, 40–42, 44–46.) It also alleges that Defendants allowed this practice of "popping" locks to continue without any solution. (*Id.*) The Complaint further claims that Defendants were not on post in the housing unit while at least *some* of the persons incarcerated were allowed to be out of their cells. (*Id.*) This is sufficient to state gross negligence in that the Complaint alleges thoughtless disregard of consequences and utter indifference to the rights of others. Therefore, the Maryland Tort Claims Act provides no immunity at this stage of litigation.

Defendants' second argument for dismissal of Counts III and IV is that those counts fail to state plausible claims under the Maryland Declaration of Rights. (ECF No. 19-1 at 20–21.) In essence, Defendants repackage their argument that Counts I and II fail to state a claim. They rely upon Maryland cases which have said that Articles 16, 24, and 25 are *in pari materia*[7] with the Eighth and Fourteenth Amendments to the Federal Constitution. (*Id.* (citing *Pickett v. Sears, Roebuck & Co.*, 775 A.2d 1218, 1224 (Md. 2001); *Aravanis v. Somerset Cnty.*, 664 A.2d 888, 894 (Md. 1995).) This argument is misplaced for two reasons. First, as the Court has already explained, Plaintiff adequately pleads claims under Counts I and II. Second, the Supreme Court of Maryland has been exceedingly clear for more than twenty years that "simply because a Maryland constitutional provision is *in pari materia* with a federal one or has a federal counterpart, does not mean that the provision will always be interpreted or applied in the same manner as its federal counterpart." *Dua v. Comcast Cable, Inc.*, 805 A.2d 1061, 1071 (Md. 2002); *accord Leidig v. State*, 256 A.3d 870, 902 (Md. 2021) (quoting *Dua*). Additionally, *Dua* instructs that "cases interpreting and applying a federal constitutional provision are only persuasive authority with respect to the similar Maryland provision." *Dua*, 805 A.2d at 1071. In sum, Defendants' Motion to Dismiss (ECF No. 19) Counts III and IV is DENIED.

---

[7] "Loosely, in conjunction with <the Maryland constitutional provision is construed *in pari materia* with the Fourth Amendment>." *In Pari Materia*, *Black's Law Dictionary* 12th ed. 2024).

## CONCLUSION

For the reasons stated on the record and explained above, the Motion to Dismiss (ECF No. 19) is DENIED.

A separate Order follows.

Date: December 12, 2025

/s/
Richard D. Bennett
United States Senior District Judge